No. A–363. DAUGHERTY v. FLORIDA ET AL.; and
No. A–366. DAUGHERTY v. DUGGER, SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS. Applications for stay of execution of sentence of death, presented to JUSTICE KENNEDY, and by him referred to the Court, denied. JUSTICE STEVENS would grant the applications.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, and with whom JUSTICE BLACKMUN joins as to Part II, dissenting.

I

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia,* 428 U. S. 153, 227 (1976), I would grant the stay of execution.

II

Even were I not of the foregoing view, I would vote to grant Mr. Daugherty's applications for a stay of execution and hold his case pending our decision in *Adams* v. *Dugger,* No. 87–121, cert. granted, 485 U. S. 933 (1988). I reach this conclusion not only because of the similarity of the claims raised by Adams and Daugherty, but also because I do not see a basis for distinguishing Daugherty's case from others that we already have agreed to hold for *Adams.*

In September of this year, we granted a stay of execution in *Preston* v. *Florida,* 487 U. S. 1265, on the assumption that we would hold Preston's case pending decision in *Adams.* In *Preston,* the prosecutor and trial judge had made statements empha-

sizing that the jury's sentence was merely advisory and that the judge remained responsible for the sentence ultimately imposed. Since we granted the stay without knowing the precise nature of those remarks (neither party quoted them to us), we do not know whether the statements made at Daugherty's sentencing hearing were any different from those made at Preston's. Given this uncertainty, we are hardly in a position to deny Daugherty's application for a stay on the ground that Preston's *Caldwell* claim, *Caldwell* v. *Mississippi*, 472 U. S. 320 (1985), was more substantial than Daugherty's.

In this case, the prosecutor told that jury that its verdict was "advisory," that the trial judge had the "final say" as to the sentence, and that the judge "is the last person who will consider what the penalty is going to be" and thus serves as a "buffer" to make sure that mistakes do not occur. Application 17. Several cases that we have held for *Adams* present facts strikingly similar to these. In *Ford* v. *Dugger*, No. 88–5582, for example, the judge told the jury several times that its sentence was "advisory" and "not binding on the court." Pet. for Cert. in No. 88–5582, p. 11. In *Spisak* v. *Ohio*, No. 88–5169, the judge stated that the jury's recommendation was "just that, a recommendation," and that "the final decision is placed by law upon the court." Pet. for Cert. in No. 88–5169, p. 15. The jury in *Grossman* v. *Florida*, No. 88–5136, learned from the prosecutor that the "judge is the one" who makes the sentencing decision and "ultimately passes sentence," that the jury's "recommendation to him is that only, a recommendation," and that "the judge will do that" (that is, impose the sentence of death), Pet. for Cert. in No. 88–5136, p. 10; in response, the judge told the jury: "As you have been told, the final decision as to what punishment shall be imposed is the responsibility of the judge." *Id.*, at 11. Finally, in *Harich* v. *Dugger*, No. 88–5216, the judge told the jury that its verdict was merely a "recommendation to the Court," that the court "pronounces whatever sentence it sees fit," that "the penalty is for the court to decide," and that the "final decision as to . . . punishment . . . rests solely upon the judge." Brief in Opposition in No. 88–5216, p. 3. I am unable to conclude that the jury in Daugherty's case received a message significantly different from that received by the juries in *Ford, Spisak, Grossman,* and *Harich.*

The difference between those four cases and this one is that a warrant has been issued for Mr. Daugherty's execution whereas

none had been issued in those other cases. I hope, however, that this does not count for us as a relevant difference. We held *Ford, Spisak, Grossman,* and *Harich* for a reason; we held them because our decision in *Adams* might shed new light on, or destroy altogether, the conclusions of the courts below. We did not refuse to hold them because their results were unlikely to change after *Adams.* I should think that, where the question is whether a man lives or dies, we should be if anything more willing to allow that a pending case might shed new light on his case.

In any event, *Preston,* like this case, involved an application for a stay—and we granted it.